UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JAMES HENDERSON and JOHN HORRELL,

    Plaintiffs,

v.

TODD RHYNE, INC.,

    Defendant.

Case No:  5:19-cv-327-JLB-PRL

## ORDER

James Henderson worked as a project manager for Todd Rhyne, Inc. ("Todd Rhyne"), a roofing company. Believing Todd Rhyne was not paying him what he was owed, Mr. Henderson sued for unpaid overtime and unlawful retaliation under the Fair Labor Standards Act ("FLSA"). Todd Rhyne moves for summary judgment, arguing that Mr. Henderson was an independent contractor outside the scope of the FLSA. Alternatively, it also argues there is no record evidence from which a jury could reasonably infer that Mr. Henderson worked more than forty hours a week or that it retaliated against him for asserting his FLSA rights. Though a genuine dispute exists over Mr. Henderson's employment status, Todd Rhyne is correct that no evidence before the Court supports Mr. Henderson's FLSA claims. Todd Rhyne's motion for summary judgment (Doc. 57) as to Counts I and III is **GRANTED**.

## BACKGROUND[1]

Todd Rhyne is in the business of replacing damaged roofs.  (Doc. 68-2 at ¶ 4.) Mr. Henderson worked as a project manager for Todd Rhyne, "which meant that [he] was responsible for finding customers, getting customers to sign paperwork prepared by Todd Rhyne, and ensuring that the contractors who actually repaired the roofs performed according to Todd Rhyne's specifications."  (Id.)  Mr. Henderson testified at his deposition that he began working for Todd Rhyne around "May, June" and replied, "[s]omewhere in there" when asked if he started "in and around June of 2018."  (Doc. 69-1 at 2, 4.)

Mr. Henderson alleges that he "was originally paid on an hourly basis." (Doc. 3 at ¶ 10.)  It is unclear, however, if Todd Rhyne ever paid Mr. Henderson on an hourly basis or whether it only promised to do so when it first hired him.  For example, Mr. Henderson states in his affidavit that "[w]hen [he] was hired, [he] was told that [he] was <u>going</u> to receive a salary of $1,250 per week" plus certain benefits. (Doc. 68-2 at ¶ 3 (emphasis added).)[2]  He also stated that he "was told [he] was going to get paid a weekly rate" at his deposition.  (Doc. 57-2 at 2.)  Mr. Henderson

---

[1] As an initial matter, the Court notes that neither party clearly sets forth the material facts of this case—much less those that are undisputed.  The Court will therefore summarize the evidence before it, noting any disputes.  All facts are viewed, and reasonable inferences drawn, in Mr. Henderson's favor on summary judgment.  See Scott v. Harris, 550 U.S. 372, 378 (2007).

[2] Todd Rhyne objects to paragraph three of Mr. Henderson's affidavit on the grounds that it allegedly "contradict[s] and conflict[s] with the deposition testimony transcript."  (Doc. 69 at 4.)  It does not cite any specific portion of the transcript though.  And Mr. Henderson did testify that he "was told [he] was going to get paid a weekly rate," which is consistent with the affidavit.  (Doc. 57-2 at 2.)  Todd Rhyne's objection is therefore overruled.

also testified that he "was on [Todd Rhyne's] payroll for the first—I don't know—four, six, eight weeks" (Doc. 69-1 at 4), but that "[a]pproximately two or three weeks after [he] started," he signed "an independent contractor agreement" (Doc. 68-2 at ¶ 3). In the same affidavit, he expressly states that he "was paid on a commission basis which meant that the more roofs [he] sold, the more money [he] made." (Id. at ¶ 5.) And the only paystub Mr. Henderson provides reflects a single commission payment less applicable federal withholdings for August 2018. (Doc. 68-4.) Last, Mr. Henderson offers a handwritten note—to which Todd Rhyne objects—that ostensibly showed what he was <u>supposed to</u> receive, but Mr. Henderson does not claim he was ever compensated per that document. (See Doc. 68 at 5–6 (citing Doc. 68-3).)

In all events, Mr. Henderson testified that Chris Moreno and Mike Davis dictated his hours at Todd Rhyne. (Doc. 57-2 at 2.) He explained that the two told him he "[h]ad to be out at The Villages every day, seeing the clients and fixing all the problems. Usually would give a list of who had to be seen, what had to be fixed and had to report back to them what did we [sic] have to do to finish the claim." (Id.) When asked if Mr. Henderson had a set schedule, Mr. Davis replied, "Yeah. Well, I mean, no, he didn't really have a set schedule, but he worked every day." (Doc. 57-3 at 3.) When asked if Mr. Henderson was "hired with the expectation that he would work seven days a week," Mr. Davis responded, "Yeah. I mean, no, not—not really that he would have that expectation." (Id.) But Mr. Davis stated

that Mr. Henderson's "performance [was]—you know, [was] based on what [he was] able to get done in a day." (Id.)

Mr. Davis also testified that Mr. Henderson was paid entirely on commission, was not an hourly employee, and that he "never told [Mr. Henderson] that [Mr. Henderson would] be paid hourly." (Id. at 2.) For his part, Mr. Henderson denied having regularly submitted the hours that he worked in a day to Mr. Moreno or Mr. Davis. (Doc. 57-2 at 2.) When asked if Todd Rhyne had ever told him he would be paid an hourly rate, Mr. Henderson noted that he was to receive a weekly rate but denied that he was ever told he would be paid on an hourly basis. (Id. at 2–3.) He agreed that the conversation about his compensation "was not based off of an hourly rate or how many hours [he] put in a week." (Id. at 3.) Mr. Henderson also denied that he was ever required to track his hours or that he submitted any hours to Todd Rhyne by testifying, "No, no. It was clear and understood what my job was." (Id.)

Either once he arrived in Florida (Doc. 69-1 at 3), or "[a]pproximately two or three weeks after" he started working for Todd Rhyne (Doc. 68-2 at ¶ 3) Mr. Henderson signed an Independent Project Manager Contractor Agreement ("Contractor Agreement"). (Doc. 58-1.)[3] The Contractor Agreement stated that

---

[3] Todd Rhyne purports to attach the document as Exhibit A of its motion for summary judgment. (See Doc. 57 at 2.) That attachment, however, is just another copy of its motion. (Doc. 57-1.) The Court thus looks to Todd Rhyne's motion in limine which includes the Contractor Agreement as Exhibit A. (Doc. 58-1.) And, despite being notarized on June 25, 2018, as well as containing appendices which also reflect that date, the Contractor Agreement states it was "made and entered into as of December 1, 2018." (Id. at 1, 4–6.) But Mr. Henderson does not dispute that he signed the document on June 25, 2018. (Doc. 68 at 1; see also Doc. 68-2 at ¶ 3.)

Mr. Henderson would be an independent contractor for Todd Rhyne while disclaiming any employer/employee relationship. (Id. at ¶ 3.1.) It also contained an integration clause stating that the Contractor Agreement superseded all prior agreements about the "subject matter of this Agreement." (Id. at ¶ 10.1.) Mr. Henderson was to be paid "at the following rate: 100% commission." (Id. at ¶ 2.5.) An appendix to the Contractor Agreement explains that Mr. Henderson's commission would "be a maximum of 50% . . . of the net gross profit," with Todd Rhyne making "a minimum of 15% of the completed job in the gross profit." (Doc. 58-1 at 5.) "Gross profit is described as the company proceeds after all costs have been allocated and/or incurred." (Id.)

At some point, Mr. Henderson "complained to Todd Rhyne that [he] was not getting paid what Defendant agreed to pay [him] and [he] felt compelled to quit because the company was not paying [him] for [his] work." (Doc. 68-2 at ¶ 10.) Mr. Davis testified that "after a bunch of jobs were done, [Mr. Henderson] went in several times, trying to get paid" but received various reasons from Todd Rhyne about why it could not or would not pay him. (Doc. 68-5 at 4.) "And at some—to [Mr. Davis's] recollection, at one point in time there, [Todd Rhyne]—had owed [Mr. Henderson] for about 20 jobs." (Id.)

But Mr. Davis's testimony does not explain how this dispute was resolved. He goes on to state that Mr. Henderson "was having some issues, ended up having to go back to Illinois there for his—his family and his house and whatnot . . . . But he ended up not getting—you know, by the time he got back, [Todd Rhyne]

completely changed everything." (Id.) And while Mr. Henderson states in his affidavit that he "felt compelled to quit because the company was not paying [him] for [his] work" (Doc. 68-2 at ¶ 10), Mr. Henderson denied having quit at his deposition, instead testifying that he "went home and refused to come back until [Todd Rhyne] straightened out payroll" (Doc. 68-1 at 6).

Mr. Henderson, John Horrell, and Christopher Moreno filed this action against Todd Rhyne. (Doc. 3.) Count I and III are Mr. Henderson's FLSA claims for overtime compensation and retaliation. (Id. at 3–4, 6–7.) Count II is a breach of contract claim on behalf of all three plaintiffs. (Id. at 5–6.) Mr. Moreno—also spelled "Merino" in the pleading—dismissed his individual claims against Todd Rhyne in Counts IV and V (along with his breach claim in Count II) and is no longer before the Court. (Docs. 26, 27.) Only Counts I and III by Mr. Henderson (alleging FLSA violations) and Count II by Mr. Henderson and Mr. Horrell (alleging breach of contract) thus remain pending. Todd Rhyne moves for summary judgment as to Mr. Henderson's FLSA claims in Counts I and III only. (Doc. 57 at 1.)

## LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing the absence of a genuine dispute and may discharge this burden by "pointing out to the district court . . . that there is an absence of evidence to support

the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The nonmoving party must then come forward with specific facts "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. "In other words, summary judgment is warranted if a jury, viewing all facts and any reasonable inferences therefrom in the light most favorable to plaintiffs, could not reasonably return a verdict in plaintiffs' favor." Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1581 (11th Cir. 1995) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

## DISCUSSION

Todd Rhyne moves for summary judgment on two grounds. First, it argues that Mr. Henderson was an independent contractor outside the scope of the FLSA as set forth by the Contractor Agreement and by his failure to track or report his hours. Second, Todd Rhyne maintains that there is no evidence demonstrating that Mr. Henderson worked overtime or that Todd Ryne retaliated against him for asserting his rights under the FLSA. Todd Rhyne's first argument does not entitle it to summary judgment because a genuine dispute exists over how Mr. Henderson performed his duties and, thus, whether he was an employee. That said, Todd Rhyne is nevertheless entitled to summary judgment because it correctly notes that the record lacks evidence supporting Mr. Henderson's FLSA claims.

**I.     A genuine dispute exists over whether Mr. Henderson was an employee or an independent contractor**.

Todd Rhyne first argues that the "undisputed evidence shows Henderson . . . [was] not [a] worker[] covered by the FLSA because [he was an] independent

contractor[] who [was] not required to track working hours and [was] paid only on commissions."  (Doc. 57 at 5.)  It relies almost entirely on the Contractor Agreement to argue why this assertion is ostensibly "undisputed."  (See id. at 9–10.)  But Todd Rhyne has failed to meet its burden on this point because its argument impermissibly focuses on the labels of the Contractor Agreement rather than the evidence about how Mr. Henderson claims to have performed his duties.

Todd Rhyne is correct in that the FLSA does not entitle independent contractors to overtime, instead extending its protections only to non-exempt employees.  Scantland v. Jeffry Knight, Inc., 721 F.3d 1308, 1311 (11th Cir. 2013) (citing Rutherford Food Corp. v. McComb, 331 U.S. 722, 728–29 (1947)).  Yet whether an individual is an employee or an independent contractor is determined by the "economic reality" of how the individual performed their duties "and whether that relationship demonstrates dependence."  Id. (citing Bartels v. Birmingham, 332 U.S. 126, 130 (1947)).  Contrary to Todd Rhyne's argument, this determination "is not governed by the 'label' put on the relationship by the parties <u>or the contract controlling that relationship</u>, but rather focuses on whether 'the work done, in its essence, follows the usual path of an employee.'"  Id. (quoting Rutherford Food Corp., 331 U.S. at 729) (emphasis added).  In other words, "putting on an 'independent contractor' label does not take the worker from the protection of the [FLSA]."  Rutherford Food Corp., 331 U.S. at 729.

There are six factors that courts use "as guides in applying the economic reality test": (1) the nature and degree of control that an alleged employer had over

how an alleged employee's work was performed; (2) "the alleged employee's opportunity for profit or loss depending upon his managerial skill"; (3) the alleged employee's investment in equipment, materials, or personnel to complete his task; (4) whether the work required special skill; (5) "the degree of permanency and duration of the working relationship"; and (6) how integral the alleged employee's services were to the employer's business. Scantland, 721 F.3d at 1312. No one factor is dispositive and "the overarching focus of the inquiry is economic dependence." Id. "Ultimately, in considering economic dependence, the [C]ourt focuses on whether an individual is in business for himself or is dependent upon finding employment in the business of others." Id. (internal quotation omitted).

      Even a cursory review of these six factors reveals a genuine dispute. For example, Todd Rhyne claims that it exercised "extremely little control" over Mr. Henderson's activities given that the Contractor Agreement delineated the services he provided. (Doc. 57 at 9.) The Contractor Agreement, however, never specifically lists those services. "Services" appears as a defined term but, in the same paragraph where those services presumably would have been enumerated, there is a colon followed by a blank space. (Doc. 58-1 at ¶ 2.1.) This also ignores Mr. Henderson's testimony that Todd Rhyne, through Mr. Moreno and Mr. Davis, directed "who had to be seen, what had to be fixed and [Mr. Henderson] had to report back to them what [he did] to finish the claim" a customer may have. (Doc. 57-2 at 2.) Further, Appendix B to the Contractor Agreement states that "[a]lthough Project Managers are on paper as a contractor . . . . Project Managers

are expected to respond to all leads given within 24 hours (no later than 36 hours)." (Doc. 58-1 at 6 (emphasis added).) If Mr. Henderson failed to respond timely to a lead from Todd Rhyne, it could "result in the lead being reassigned." (Id.) There is no evidence that Mr. Henderson was allowed to, or did, pursue his own leads as opposed to those Todd Rhyne provided him.

Perplexingly, Todd Rhyne also argues that Mr. Henderson was "not prohibited from engaging other employers." (Doc. 57 at 9.) It advances this position despite the Contractor Agreement's Non-Compete Clause which prevented Mr. Henderson from not only engaging other employers while working for Todd Rhyne, but also from doing so for one year after his departure within a 100-mile radius. (Doc. 58-1 at ¶ 8.0.) Todd Rhyne claims that Mr. Henderson "enjoyed substantial opportunity for profit or loss depending on [his] managerial skill." (Doc. 57 at 9.) Mr. Davis, however, testified that Mr. Henderson's commissions were "based on what [he was] able to get done in a day." (Doc. 57-3 at 3.) In this way, Mr. Henderson's "opportunity for profit was largely limited to [his] ability to complete more jobs" and "unrelated to [his] ability to earn or lose profit via his managerial skill." Scantland, 721 F.3d at 1316–17.

And while the Contractor Agreement required that Mr. Henderson provide his own tools and hire any additional personnel at his own expense, (Doc. 58-1 at ¶ 2.2), Mr. Henderson attests that he "did not have any employees and as far as tools and equipment, [he] only used a ladder, tape measure and a camera." (Doc. 68-2 at ¶ 6.) "It is not significant how one 'could have' acted under the contract terms.

- 10 -

The controlling economic realities are reflected by the way one actually acts." Usery v. Pilgrim Equip. Co., 527 F.2d 1308, 1312 (5th Cir. 1976).[4] Confusingly, Todd Rhyne also argues that "the service [Mr. Henderson] rendered required little special skill." (Doc. 57 at 9–10.) Yet this would support a finding that Mr. Henderson was an employee, not an independent contractor if his role did not require special skills. See Scantland, 721 F.3d at 1318.

An exhaustive analysis of the above factors is unnecessary. The record evidence before the Court reveals a genuine dispute over whether Mr. Henderson was an independent contractor or an employee. For that reason, Todd Rhyne has failed to meet its burden on summary judgment in arguing the FLSA does not apply to Mr. Henderson because he was an independent contractor.

## II. Mr. Henderson's evidence cannot support an FLSA overtime claim.

Even assuming Mr. Henderson was a non-exempt FLSA employee, Todd Rhyne still correctly notes that "[n]o record evidence demonstrates [Mr. Henderson] worked more than forty hours during any week." (Doc. 57 at 7.) Mr. Henderson cites no evidence in response that would support such an inference. He instead proffers a single sentence that "Defendant's failure to keep track of the hours Plaintiff Henderson worked cannot be used to Defendant's advantage." (Doc. 68 at 4.)

---

[4] The Eleventh Circuit has adopted, as binding precedent, all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

To prevail on his FLSA overtime claim, Mr. Henderson must prove that: (1) he worked overtime without compensation; and (2) that Todd Rhyne knew or should have known of the overtime work. Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1314–15 (11th Cir. 2007). True, "[t]he remedial nature of [the FLSA] and the great public policy which it embodies . . . militate against making [a plaintiff's burden of proving that he worked overtime without compensation] an impossible hurdle for the employee." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946), superseded by statute on other grounds, Portal-to-Portal Act of 1947, Pub. L. No. 49-52, § 5, 61 Stat. 84, 87 (May 14, 1947) (codified at 29 U.S.C. § 216(b)). But when an employer "has failed to keep proper and accurate records and the employee cannot offer convincing substitutes," as appears to be the case here, a difficult problem arises. Allen, 495 F.3d at 1315.

Mr. Henderson's position ignores that Todd Rhyne's failure to keep track of his hours does not absolve him from producing any evidence whatsoever. The Supreme Court in such cases has held that "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Anderson, 328 U.S. at 687 (emphasis added). Mr. Henderson cites no such evidence though. To be certain, he cites evidence that shows he was not paid for work he performed (e.g., that Todd Rhyne "had owed him for about 20 jobs"). (Doc. 68-5 at 4.) But this is not enough for a jury to draw a "just and reasonable inference" about the

overtime he claims to have worked for which he was not compensated.  Anderson, 328 U.S. at 687.  The Court, and thus a jury, cannot determine how many hours he worked across these twenty jobs or whether a job resulted in overtime work on any given day.  In other words, the "fact that [Mr. Henderson] was not compensated for this time does nothing to explain whether he worked over forty hours a week because [he] could have been uncompensated for time, but still worked less than forty hours."  Sneed v. Ken Edwards Enters., Inc., No. 1:07-CV-1088-RLV-LTW, 2009 WL 10668429, at *19 (N.D. Ga. Aug. 18, 2009), adopted as modified 2009 WL 10672371 (N.D. Ga. Sept. 17, 2009).

Nor is this a case in which proof of the number of hours worked is inexact or not perfectly accurate, thus making summary judgment inappropriate. See Marshall v. Mammas Fried Chicken, Inc., 590 F.2d 598, 599 (5th Cir. 1979). Simply put, the Court can draw no inference in Mr. Henderson's favor because he has cited nothing that suggests he may have worked more than forty hours in any given week.  Mr. Henderson has thus "failed to meet even the relaxed burden of 'produc[ing] sufficient evidence to show the amount and extent of [his] work as a matter of just and reasonable inference.'"  Jackson v. Corr. Corp. of Am., 606 F. App'x 945, 952 (11th Cir. 2015) (quoting Allen, 495 F.3d at 1316).  Therefore, summary judgment in Todd Rhyne's favor on Count I is appropriate.  See id. at 952–53 (affirming district court's grant of summary judgment in FLSA case when plaintiff "failed to create a genuine issue of material fact about whether she performed work for which she was not paid").

### III. Mr. Henderson fails to show that he complained about his rights under the FLSA to Todd Rhyne.

Todd Rhyne similarly argues that no evidence supports the allegation that Mr. Henderson engaged in protected activity by "complain[ing] to Defendant that he had not been getting paid as he should in violation of the [FLSA]."  (Doc. 57 at 12 (citing Doc. 3 at ¶ 33).)  Mr. Henderson counters that his testimony shows "he complained about not being paid what he was owed by Defendant and part of that complaint involved the hours he was working and Defendant's failure to pay him for his time."  (Doc. 68 at 10.)  The Court disagrees with this characterization.  The testimony Mr. Henderson cites supports no inference that he complained about the hours he actually worked.  And "[s]tatements by counsel in briefs are not evidence." Travaglio v. Am. Exp. Co., 735 F.3d 1266, 1270 (11th Cir. 2013).

The problem is that Mr. Henderson fails to cite any evidence that he asserted his rights under the FLSA when complaining to Todd Rhyne.  An employer may not retaliate against an employee who asserts his or her FLSA rights.  See Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 4 (2011); 29 U.S.C. § 215(a)(3).  Indeed, a plaintiff alleging unlawful retaliation under the FLSA must prove that he or she "engaged in activity protected under [the] act."  Wolf v. Coca-Cola Co., 200 F.3d 1337, 1342–43 (11th Cir. 2000) (quotation omitted) (affirming summary judgment where evidence was "insufficient to meet [a]ppellant's burden of producing a dispute of material fact regarding whether she asserted FLSA rights before being fired").  An employee need not expressly reference the FLSA in his or her complaint to an employer, though, so long as the complaint "constitute[s] an

assertion of rights protected under the statute." E.E.O.C. v. White & Son Enters., 881 F.2d 1006, 1011 (11th Cir. 1989). As the Supreme Court has held, "[t]o fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the [FLSA] and a call for their protection." Kasten, 563 U.S. at 14.

Here, as Todd Rhyne notes, the record contains no evidence suggesting Mr. Henderson asserted his FLSA rights or otherwise alerted his employer that he was implicating the same. Mr. Henderson cites his deposition testimony that he "went home and refused to come back until [Todd Rhyne] straightened out payroll." (Doc. 68 at 10 (quoting Doc. 68-1 at 6).) He also notes Mr. Davis's testimony about Todd Rhyne failing to pay Mr. Henderson "for about 20 jobs." (Id.) Neither of these statements, however, support an inference that Mr. Henderson's unspecified complaints "involved the hours he was working and Defendant's failure to pay him for his time," in violation of the FLSA as Mr. Henderson argues.

To the contrary, Mr. Henderson testified that he was not required to track his hours, did not track his hours, and never submitted his hours to Todd Rhyne. (Doc. 57-2 at 2–3.) Nor does any evidence demonstrate that Mr. Henderson received compensation based on the amount of time he worked for Todd Rhyne (e.g., an hourly or weekly rate)—rather, he states in his affidavit that he was "paid on a commission basis." (Doc. 68-2 at ¶ 5.) Similarly, the evidence Mr. Henderson relies on cannot support an inference that he complained about being misclassified

as an independent contractor. Mr. Henderson does not dispute that he signed the Contractor Agreement, or that he ever reported his hours for review, going so far as to testify that "[i]t was clear and [he] understood what [his] job was." (Doc. 57-2 at 3.)

At bottom, the evidence shows that Mr. Henderson "complained to Todd Rhyne that [he] was not getting paid what Defendant agreed to pay [him] and [he] felt compelled to quit because the company was not paying [him] for [his] work." (Doc. 68-2 at ¶ 10.) Be that as it may, the FLSA "neither converts an employer's contract breach into a violation of federal law, nor generally federalizes disputes between employers and employees." Dunn v. Sederakis, 143 F. Supp. 3d 102, 110 (S.D.N.Y. 2015). While the evidence before the Court may support Mr. Henderson's breach of contract claim, it does not support his unlawful retaliation claim under the FLSA. And because Mr. Henderson has failed to identify evidence that his statements put Todd Rhyne on notice that Mr. Henderson was asserting statutory rights under the FLSA, Todd Rhyne is entitled to summary judgment on Count III.

## CONCLUSION

Despite a genuine dispute existing over whether Mr. Henderson was a non-exempt FLSA employee, Todd Rhyne is entitled to summary judgment on Counts I and III given the record before the Court. Even assuming Mr. Henderson was a non-exempt FSLA employee, there is no evidence from which a reasonable jury could find that Mr. Henderson worked over forty hours in any week for which he

was not paid. Moreover, Todd Rhyne is correct in that nothing in the record suggests Mr. Henderson asserted his rights under the FLSA when he complained to Todd Rhyne about his compensation. While the evidence may support the breach of contract claim in Count II, Mr. Henderson's failure to supplement the record with the evidence necessary to sustain his FLSA claims means Todd Rhyne's motion is due to be granted.

Last, with the disposition of all federal claims, the Court has doubts over whether it should exercise supplemental jurisdiction on the remaining state law claim. Prior to making that determination, however, the Court will afford the parties the opportunity to brief this issue.

Accordingly, it is **ORDERED**:

1. Todd Rhyne's motion for summary judgment (Doc. 57) is **GRANTED**.
2. The Court **GRANTS** summary judgment for Todd Rhyne as to Mr. Henderson's FLSA claims in Counts I and III.
3. The Court notes that it has now dismissed "all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Accordingly, **on or before August 9, 2022**, Mr. Henderson, Mr. Horrell, and Todd Rhyne are **DIRECTED** to file a separate or joint notice(s) explaining why the Court should or should not exercise supplemental jurisdiction over the remaining state-law breach of contract claim in Count II or the appropriate dismissal document if they agree to a dismissal without prejudice so that they may litigate that claim in state court.

4. If Court decides to exercise supplemental jurisdiction, a status conference will be scheduled by separate order to discuss a trial term on the remaining claim in Count II.

**ORDERED** at Ocala, Florida, on July 19, 2022.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE